# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 10, 2017 Session

## DANNY C. GARLAND, II v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Knox County**
**No. 189106-3   Jon Kerry Blackwood, Senior Judge**

---

**No. E2016-01106-SC-R3-BP – Filed August 10, 2017**

---

HOLLY KIRBY, J., dissenting.

I respectfully dissent from the majority opinion in this case.

From the majority's recitation of the facts in this case, we can all agree that the complainant, Ms. McKeogh, did not get good service overall from Mr. Garland's office. However, the majority's recitation of the facts also makes it clear that the problems of which Ms. McKeogh complains arise from the actions or inactions of Mr. Garland's staff, particularly Ms. Harris and Ms. Snyder.

As the majority notes, Mr. Garland had a high-volume practice focusing on family law. He was frequently in court, depositions and meetings, so he relied on his staff, primarily Ms. Harris, to talk to clients and answer their questions, usually via email or by telephone. He also relied on his staff to make him aware of things that needed his attention, such as items arriving at his office in the mail. As a backstop, the majority opinion indicates, Mr. Garland reviewed his active files every thirty to forty-five days to make sure that something that needed action had not been overlooked.

The facts in this case center on the failure of Mr. Garland's staff to respond to Ms. McKeogh's inquiries, the staff's failure to make Mr. Garland aware of things that needed his attention, or staff members' general incompetence in tasks such as filing and mailing. For example, Mr. Garland's staff failed to inform him that the child's biological father, Mr. Atchley, had signed a consent order agreeing to the adoption of the child. Ms. Snyder then misfiled that consent order by placing it in Ms. McKeogh's closed divorce

file instead of her open adoption file. Ms. Harris repeatedly failed to respond to Ms. McKeogh's numerous email inquiries about the status of her case. Although Ms. Harris was told that Ms. McKeogh's husband might be deployed soon, Ms. Snyder nevertheless mailed a copy of the amended petition—for Ms. McKeogh's husband to sign—to the wrong address. Ms. Harris neglected to respond to Ms. McKeogh's numerous voicemail messages. When Ms. McKeogh became exasperated with the staff and asked to speak to Mr. Garland, his staff told her that she should speak to Ms. Harris.

The majority opinion observes, and Mr. Garland admits, that as the lawyer in charge of his office, Mr. Garland "was responsible for the shortcomings of his staff." I agree. I part company with the majority because, while the charges against Mr. Garland in this case emanate from his supervision of his nonlawyer staff, the Board chose not to proceed against Mr. Garland under the rules that specifically govern a lawyer's responsibility for nonlawyer staff.

Rule 5.3 of the Rules of Professional Conduct addresses a lawyer's responsibilities for nonlawyer assistants:

> Rule 5.3. Responsibilities Regarding Nonlawyer Assistance
>
> With respect to a nonlawyer employed or retained by or associated with a lawyer:
>
> (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer;
>
> (b) a lawyer having direct supervisory authority over a nonlawyer shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer; and
>
> (c) a lawyer shall be responsible for conduct of a nonlawyer that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
>
>> (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
>>
>> (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the nonlawyer is employed, or has direct

-2-

supervisory authority over the nonlawyer, and knows of the nonlawyer's conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Tenn. S. Ct. R. 8, RPC 5.3. Thus, Rule 5.3 sets outs what a lawyer is expected to do to supervise his nonlawyer staff, and also establishes the parameters for when the lawyer may be held responsible for staff's conduct that would violate the Rules of Professional Conduct if engaged in by a lawyer. Under Rule 5.3, a lawyer must "make reasonable efforts" to ensure that his firm adopts "measures giving reasonable assurance" that the nonlawyer staff's conduct is "compatible with the professional obligations of the lawyer." *Id.* at 5.3(a). A lawyer with direct supervisory authority must "make reasonable efforts" to ensure that his staff's conduct is "compatible with" the lawyer's professional obligations. *Id.* at 5.3(b). If the lawyer's staff engages in conduct that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer, the lawyer will be held responsible for the violation if the lawyer "orders" or "ratifies" the staff's conduct, or if the lawyer "knows of" the staff's conduct "at a time when its consequences can be avoided or mitigated" but he nevertheless "fails to take reasonable remedial action."

Rule 5.3 was tailor-made for situations such as the one presented in this case. Mr. Garland had delegated to his nonlawyer staff responsibilities for taking client inquiries by email and telephone while he was in court, in depositions, or in meetings, for keeping his clients informed regarding the status of their matters, and for making certain that important correspondence and developments that demanded action were brought to Mr. Garland's attention. Mr. Garland's staff failed in all of these regards. Their conduct, if engaged in by a lawyer, would have violated more than one Rule of Professional Conduct, including RPC 1.4 on communications with clients and RPC 1.3 on diligence.

Having established that Mr. Garland's employees engaged in conduct that would have constituted ethical violations if they were lawyers, it then becomes necessary to examine Mr. Garland's supervision of those employees. Under Rule 5.3(a), the Board would look at whether Mr. Garland had in place "measures giving reasonable assurance" that his staff's conduct in performing the tasks delegated to them would comply with his professional obligations. Since Mr. Garland had direct supervisory authority over his staff, under 5.3(b), the Board would look at whether Mr. Garland made "reasonable efforts" to ensure that his staff's conduct comported with his professional obligations. Under 5.3(c), the Board would determine whether Mr. Garland ordered the conduct that formed the basis for the infraction, whether he ratified it, or whether he learned of it "at a time when its consequences [could] be avoided or mitigated."

In this case, despite the fact that the infractions are clearly premised on Mr. Garland's supervision of his nonlawyer employees, the Board inexplicably does not appear to have proceeded against Mr. Garland under Rule 5.3. As noted in the majority opinion, the Board made no findings, one way or the other, under Rule 5.3. We are given no explanation for their failure to do so.

I disagree with the majority opinion primarily because, absent appropriate findings by the hearing panel under Rule 5.3, the case is simply not in the proper posture for our decision. We have no findings on what measures Mr. Garland *should have* had in place to supervise his staff. We have no findings on what efforts Mr. Garland *should have* made to reasonably ensure that his staff's conduct was appropriate. We have no findings on whether Mr. Garland ordered or ratified his staff's infractions, or whether he learned of them at a time when the consequences to Ms. McKeough could have been "avoided or mitigated."

There are countless lawyers in Tennessee with law practices similar to Mr. Garland's high-volume practice, in which many daily tasks and interactions with clients are delegated to nonlawyer staff. Delegating such tasks to nonlawyer employees does not violate ethical rules, but failing to properly supervise nonlawyer employees does. It is important for practicing lawyers to understand what this Court expects from them in terms of supervising nonlawyer staff to whom mundane but important tasks are delegated. The majority opinion gives lawyers little useful information in that regard. The majority says only that Mr. Garland "should have taken a more active role in keeping Ms. McKeough advised," that he "did not discover" things such as the consent order that his staff misfiled, and that his "procedures were ineffective." The majority opinion gives lawyers no indication of what specifically Mr. Garland should have done differently. It tells them only that he fell short.

I fault the Board primarily for the posture of this case. It is important for ethical charges against lawyers to be properly framed, so that the rules adopted to govern certain situations are applied to the intended situations. That was not done in this case. Ms.

McKeough's complaint should have proceeded under Rule 5.3, and the hearing panel should have considered the matter under Rule 5.3.  Because the Board did not do so, this Court has not been given the findings needed to properly determine this appeal.

For these reasons, I respectfully dissent.


_____
HOLLY KIRBY, JUSTICE